**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAVID SCHONFELD,**

                     **Plaintiff,**

   vs.                                                   **1:15-cv-01425**
                                                          **(MAD/CFH)**

**WELLS FARGO BANK, N.A., as trustee for**
**the Aegis Asset Backed Securities Trust**
**Mortgage Pass-Through Certificates,**
**Series 2004-3; AEGIS ASSET BACKED**
**SECURITIES CORPORATION; and MORTGAGE**
**ELECTRONIC REGISTRATION SYSTEMS, INC.,**

                     **Defendants.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**DAVID SCHONFELD**
222 Bullock Road
Slingerlands, New York 12159
Plaintiff, *pro se*

**d'ARCAMBAL, OUSLEY LAW FIRM**        **MICHELLE J. d'ARCAMBAL, ESQ.**
40 Fulton - Suite 1005                        **DEIRDRE A. CONNOLLY, ESQ.**
New York, New York 10038
Attorneys for Defendants Wells Fargo Bank,
N.A., as trustee for the Aegis Asset
Backed Securities Trust Mortgage
Pass-Through Certificates, Series 2004-3; and
Mortgage Electronic Registration Systems, Inc.


**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

*Pro se* Plaintiff David Schonfeld commenced this action on December 1, 2015 against

Wells Fargo Bank, N.A. ("Wells Fargo"), Aegis Asset Backed Securities Corporation ("Aegis"),

and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants"). *See*

Dkt. No. 1. Plaintiff alleges causes of action for breach of contract, fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. *See id.* ¶¶ 114-50. On November 21, 2016, Wells Fargo and MERS (the "Moving Defendants") filed a motion for summary judgment, *see* Dkt. No. 31, which Plaintiff opposes, *see* Dkt. No. 33. Currently before the Court is the Moving Defendants' motion for summary judgment.

## II. BACKGROUND

On April 20, 2004, Plaintiff executed a promissory note to lender Aegis in the principal amount of $390,000.00. *See* Dkt. No. 31-6 ¶ 1; Dkt. No. 31-5 at 23. That same day, Plaintiff executed a mortgage to secure the note in favor of MERS on property located at 222 Bullock Road, Slingerlands, New York 12159. *See* Dkt. No. 31-6 ¶ 2; Dkt. No. 31-5 at 2. The mortgage indicates that MERS is acting solely as a nominee for the lender and the lender's successors and assigns. *See* Dkt. No. 31-5 at 2. The mortgage was recorded in the Albany County Clerk's office on May 4, 2004. *See id.* On March 23, 2011, MERS assigned the mortgage to Wells Fargo as trustee for Aegis Asset Backed Securities Trust Mortgage Pass-Through Certificates, Series 2004-3. *See id.* at 29.

According to the Moving Defendants' statement of material facts and to a declaration filed by the Moving Defendants' attorney, Plaintiff failed to make payments on the mortgage in 2011, and Wells Fargo commenced a foreclosure action against Plaintiff in state court. *See* Dkt. No. 31-6 ¶ 4; Dkt. No. 31-1 ¶ 2. The parties then entered into a loan modification agreement and the foreclosure action was discontinued. *See id.*

According to the Moving Defendants' statement of material facts, Plaintiff again defaulted on the mortgage in or around March of 2014. *See* Dkt. No. 31-6 ¶ 5. On September 1, 2014, Select Portfolio Servicing, Inc. ("SPS") became the servicer for the mortgage. *See id.* ¶ 6; Dkt.

2

No. 31-5 at 32. From September 2014 to October 2015, SPS sent Plaintiff a number of letters concerning Plaintiff's default on the mortgage and loan resolution options. *See* Dkt. No. 31-6 ¶¶ 7-21.

On December 1, 2015, Plaintiff commenced the instant action.[1] Plaintiff makes general allegations throughout the complaint regarding the validity of the mortgage assignment. *See* Dkt. No. 1 ¶¶ 49-60, 114-22. Plaintiff also alleges that MERS never possessed or had the authority to transfer the note, and cannot assign an enforceable mortgage. *See id.* ¶¶ 66-73. Plaintiff also asserts various general allegations regarding the legality of MERS as an entity. *See id.* ¶¶ 85-110.

In Plaintiff's breach of contract cause of action, Plaintiff alleges that Defendants breached their agreements "by failing to notify Plaintiff of the change in ownership of the Note and Mortgage, pursuant to the Mortgage." *Id.* ¶ 118. Plaintiff further alleges that Defendants breached their agreements by failing to record Wells Fargo's interest in the mortgage in the county records. *See id.* ¶¶ 122-28. In Plaintiff's cause of action for fraud, Plaintiff alleges that Defendants "were more than well aware that the statement and non-recorded Assignment were beyond false." *Id.* ¶ 132. Plaintiff makes several other general and vague allegations, including that "Defendants were lying intentionally in order to induce plaintiff to do what they wanted." *Id.* ¶ 133. In Plaintiff's final cause of action for RICO violations, Plaintiff again asserts vague allegations, including that Wells Fargo "consummated, collaborated, and executed serious [sic] of frauds, theft, and felonious crimes that infringed on Plaintiff." *Id.* ¶ 146. Plaintiff requests

---

[1] The Moving Defendants suspect that, instead of attempting to submit another loan modification application to Wells Fargo, Plaintiff was approached by a business called Andersen Forensics, which is a company that purportedly helps people repair bad credit. *See* Dkt. No. 31-3 at 8 n.2; *see also* Dkt. No. 20.

damages in the amount of $390,000.00 for breach of contract, $250,000.00 for fraud, and $500,000.00 for RICO violations. *See id.* at 17.

The Moving Defendants argue that Plaintiff's breach of contract claim is unsupported. They point to language in the mortgage that permits an assignment of the note and mortgage without notice to Plaintiff. *See* Dkt. No. 31-3 at 10. They also argue that Plaintiff cannot establish a breach of contract claim based on the splitting of the note and mortgage. *See id.* at 11. With respect to Plaintiff's fraud claim, the Moving Defendants argue that Plaintiff's broad allegations fail to identify any particular false statement allegedly made by Defendants. *See id.* at 13-14. With respect to Plaintiff's RICO claims, the Moving Defendants contend that Plaintiff cannot demonstrate a "pattern of racketeering activity," which is necessary to sustain a RICO claim. *See id.* at 14-15. The Moving Defendants further argue that Plaintiff does not have standing to bring claims against MERS, and that even if Plaintiff did have standing, Plaintiff's claims regarding MERS's assignment of the mortgage are without merit. *See id.* at 16-19.

In Plaintiff's opposition, he repeatedly articulates the summary judgment standard and argues that questions of fact preclude summary judgment, although he does not specifically identify any particular facts that are in dispute. *See* Dkt. No. 33 at 1-7. Plaintiff further argues that discovery is incomplete. *See id.* at 7-9. Plaintiff also relies on a case from the New York Supreme Court, Appellate Division, First Department that dealt with whether a party to a contract to render services could be liable in tort to third persons. *See id.* at 6 (citing *Rahim v. Sottile Sec. Co.*, 32 A.D.3d 77, 80 (1st Dep't 2006)).

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citations omitted). "[C]ourts must construe *pro se* pleadings broadly, and interpret them 'to raise the strongest arguments that they suggest.'" *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). "Courts 'are less demanding of [*pro se*]

5

litigants generally, particularly where motions for summary judgment are concerned.'" *Sec. & Exch. Comm'n v. Penn*, 225 F. Supp. 3d 225, 233 (S.D.N.Y. 2016) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014)). "This lower standard for *pro se* litigants does not, however, 'relieve [the *pro se* litigant] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Id.* (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).

## B. Background of MERS

Plaintiff makes a number of allegations about MERS and its recording system. *See* Dkt. No. 1 ¶¶ 85-110. Plaintiff claims that "MERS is simply an 'artificial' entity designed to circumvent certain law and other legal requirements dealing with mortgage loans." *Id.* ¶ 88. Plaintiff alleges that "[i]n the present case, because no recorded assignment of the Mortgage occurred while the ownership changed, a nullity has occurred. The Mortgage is legally unenforceable by MERS and its successors in interest." *Id.* ¶ 90. Plaintiff further alleges that "MERS never acquires actual physical possession of the mortgage Note, nor do they acquire any beneficial interest in the Note." *Id.* ¶ 92.

The New York Court of Appeals has provided the following useful background information regarding MERS:

> In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interest in residential mortgages. Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system.
>
> The initial MERS mortgage is recorded in the County Clerk's office with "Mortgage Electronic Registration Systems, Inc." named as the lender's nominee or mortgagee of record on the instrument. During

6

> the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded; instead they are tracked electronically in MERS's private system. In the MERS system, the mortgagor is notified of transfers of servicing rights pursuant to the Truth in Lending Act, but not necessarily of assignments of the beneficial interest in the mortgage.

*Knox v. Countrywide Bank*, 4 F. Supp. 3d 499, 505 (E.D.N.Y. 2014) (quoting *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96 (2006)) (footnotes omitted). Generally, "courts have upheld the MERS system against broad challenges, although the Second Department in New York has held that the splitting of the note from the mortgage affects which entities have standing to foreclose." *Id.* (citing *Bank of New York v. Silverberg*, 86 A.D.3d 274 (2d Dep't 2011)).[2] Courts have held that the "splitting" of the note and mortgage does not invalidate those instruments. *See id.* at 508. "It is thus clear under New York law that the recording and transferring of mortgages through MERS is a proper and acceptable method for doing so." *Dimaria v. Accredited Home Lenders, Inc.*, No. 14-CV-6292, 2016 WL 4033164, *2 (E.D.N.Y. July 27, 2016).

## C. Breach of Contract

"Under New York law, 'an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'" *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (quoting *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)). "Summary judgment is appropriate if the terms of the contract are unambiguous." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (citation omitted).

---

[2] In *Silverberg*, the Second Department held that an assignee of MERS did not have standing to commence a foreclosure action where MERS was listed in the mortgage instruments as nominee and mortgagee for the purposes of recording but was never the holder or assignee of the underlying note. *See Silverberg*, 86 A.D.3d at 283.

Plaintiff alleges that Defendants "breached their agreement with Plaintiff . . . by failing to notify Plaintiff of the change in ownership of the Note and Mortgage, pursuant to the Mortgage." Dkt. No. 1 ¶ 118. Plaintiff believes that this failure to notify him voids the mortgage and the note. *See id.* ¶ 53. However, the mortgage states that "[t]he Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales." Dkt. No. 31-3 at 10; Dkt. No. 31-5 at 16. Accordingly, Plaintiff cannot establish a breach of contract claim on that ground. *See Santana v. Fed. Nat'l Mortg. Ass'n*, No. 1:15-CV-1424, 2016 WL 3149731, *3 (N.D.N.Y. June 3, 2016) ("Plaintiff cannot claim that Defendants breached the mortgage by failing to give him notice of a change in ownership of the note and mortgage when the mortgage does not require such notice."); *Zap v. Mortg. Elec. Registration Sys., Inc.*, No. 6:15-cv-00624, 2016 WL 6471229, *5 (N.D.N.Y. Nov. 1, 2016) ("Since the mortgage itself states that the mortgage and note may be sold without notice to the mortgagor, MERS did not breach the mortgage agreement by failing to notify Plaintiff of the transfer of these instruments.").

Plaintiff also asserts various vague allegations regarding Wells Fargo's failure to record its interest in the mortgage. *See id.* ¶¶ 122-28. Plaintiff alleges that "while the Mortgage indicates the Note and Mortgage may be sold, it therein states that the Mortgage and Note would be transferred together. No assignment of the Mortgage is recorded in the county records to reflect the transfer of Plaintiff's Loan to [Wells Fargo]." Dkt. No. 1 ¶ 122. The plaintiff in *Santana* made a very similar argument, and the court held that "[w]hether the Mortgage was split from the Note is inconsequential for the purposes of analyzing a claim for breach of contract. '[S]plit mortgages may invalidate the standing of the purported mortgagee but they do not invalidate the existence of a lien on validly secured property.'" *Santana*, 2016 WL 3149731, at *3 (quoting

8

*Caraballo v. Homecomings Fin.*, No. 12 Civ. 3127, 2014 WL 2117225, *3 (S.D.N.Y. May 21, 2014)). Accordingly, Plaintiff has failed to establish a breach of contract claim on that ground as well.

Liberally construed, the complaint also appears to allege a breach of the implied covenant of good faith and fair dealing. *See* Dkt. No. 1 ¶ 118. At the outset, "New York law 'does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled.'" *Palmer Kane LLC v. Scholastic Corp.*, No. 12 Civ. 3890, 2014 WL 1303135, *6 (S.D.N.Y. Mar. 31, 2014) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)). Here, Plaintiff's allegations with respect to his purported claim for breach of the covenant of good faith and fair dealing are based on the same facts that give rise to his breach of contract claim—namely that Defendants failed to notify Plaintiff of the change in ownership of the mortgage. *See* Dkt. No. 1 ¶ 118.

Despite the existence of a contract, a plaintiff may still succeed on a claim for breach of the implied covenant of good faith and fair dealing if he can "establish[] a legal duty separate and apart from contractual duties." *Washington v. Kellwood Co.*, No. 05 Civ. 10034, 2009 WL 855652, *6 (S.D.N.Y. Mar. 24, 2009). To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must establish the following: "(1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty; and (3) the breach of duty must proximately cause plaintiff's damages." *Id.* (citation omitted). Here, Plaintiff has failed to identify in his complaint or in his opposition brief any separate duties owed to him or how Defendants breached any such duty. Again, Plaintiff's allegations stem from

Defendants' failure to notify him of the change in ownership of the mortgage, but the mortgage explicitly allows for such an assignment.

Accordingly, the Moving Defendants' are entitled to summary judgment on Plaintiff's breach of contract claim.

**D.     Fraud**

"A claim for fraud under New York law requires '[1] a material misrepresentation of a fact, [2] knowledge of its falsity, [3] an intent to induce reliance, [4] justifiable reliance by the plaintiff and [5] damages.'" *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 514 (S.D.N.Y. 2014) (quoting *Landesbank Baden–Wurttemberg v. Goldman, Sachs & Co.*, 478 Fed. Appx. 679, 681 (2d Cir. 2012)). A party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 51 (2d Cir. 1995) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Plaintiff has failed to particularly identify any alleged fraudulent statements. In his complaint, Plaintiff states that "Defendants were more than well aware that the statement and non-recorded Assignment were beyond false." Dkt. No. 1 ¶ 132. Plaintiff then states that "Defendants were lying intentionally in order to induce plaintiff to do what they wanted," *id.* ¶ 133, and that "Plaintiff did not know that the Defendants' statement was a lie," *id.* ¶ 134. Plaintiff further submits that he was harmed in the amount of $250,000.00, but provides no explanation as to how he calculated this amount. *See id.* ¶ 135.

The plaintiff in *Santana* brought very similar allegations of fraud, and the court held that Plaintiff's allegations could not survive a motion to dismiss. *See Santana*, 2016 WL 3149731, at *4. The court stated the following:

> Plaintiff does not identify a particular statement that was false, but instead contends that he had a false belief about ownership of the mortgage and implies that Defendants should have known of that belief. That allegation does not identify the particular statement, the identity of the speaker, or the time and place where the allegedly fraudulent statement was made. In that sense, the allegation falls short of the requirements outlined above. Moreover, the Complaint also fails to explain why the statements were fraudulent, or to what action the statements induced him. Plaintiff also fails to offer any explanation of how the fraud damaged him; he just offers an amount of damages.

*Id.* Similarly, here, Plaintiff does not allege any specific misrepresentation, and offers no explanation as to how he arrived at his damages calculation. Plaintiff's opposition brief also fails to identify any specific misrepresentation. Plaintiff has certainly failed to point to any evidence in the record establishing that Defendants made a material misrepresentation, how any specific statements were fraudulent, or that Defendants had an intent to induce reliance.

Also, like in *Santana*, Plaintiff's fraud claim appears to be based on the same facts that his breach of contract claim is based on. Plaintiff's fraud allegations stem from Defendants' failure to notify Plaintiff of the change in ownership of the mortgage and from Wells Fargo's failure to record its interest in the mortgage. *See* Dkt. No. 1 ¶ 132. Likewise, Plaintiff argues that Defendants breached their agreements with Plaintiff by failing to notify him of the change in ownership of the note and mortgage and by failing to record the transfer of the mortgage in the county records. *See id.* ¶¶ 118-28. "In New York, '[i]t is well settled that a cause of action for fraud does not arise where, as here, the fraud alleged relates to a breach of contract.'" *Santana*, 2016 WL 3149731, at *4 (quoting *Salvador v. Uncle Sam's Auctions & Realty, Inc.*, 307 A.D.

11

609, 611 (3d Dep't 2003)); *see also Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 366 (N.D.N.Y. 2013) ("Where a plaintiff pleads both a fraud claim and a breach of contract claim, the plaintiff must distinguish the two by (1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages."). Plaintiff fails to adequately distinguish the two causes of action.

Accordingly, the Moving Defendants' motion for summary judgment on Plaintiff's fraud claim is granted.

## E. RICO Violations

"To establish a RICO claim, a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 904 (2d Cir. 1996)). "To establish a substantive RICO violation, a plaintiff must show a 'pattern of racketeering activity,' 18 U.S.C. § 1962(a)-(c), and to establish a RICO conspiracy, a plaintiff must show a conspiracy to commit a substantive RICO violation, *id.* § 1962(d)." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). Accordingly, "[u]nder any prong of § 1962, a plaintiff in a civil RICO suit must establish a 'pattern of racketeering activity.'" *Id.* (quotation omitted).

According to 18 U.S.C. § 1961, a "'pattern of racketeering activity' requires at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "The acts of racketeering activity that constitute the pattern must be among the various criminal offenses listed

in § 1961(1), and they must be 'related, and [either] amount to or pose a threat of continuing criminal activity.'" *Spool*, 520 F.3d at 183 (quoting *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)).

In the present matter, Plaintiff asserts vague allegations regarding Defendants' purported RICO violations. As mentioned above, Plaintiff alleges that Wells Fargo "consummated, collaborated, and executed serious [sic] of frauds, theft, and felonious crimes that infringed on Plaintiff." Dkt. No. 1 ¶ 146. Plaintiff also alleges that "[t]he multiple Ponzi schemes within and surrounding the 'Securitization Scheme' is in fact a public ill." *Id.* ¶ 145. Even liberally construing Plaintiff's submissions, Plaintiff fails to establish that Defendants committed any of the predicate offenses in 18 U.S.C. § 1961(1). Plaintiff makes vague allegations of fraud throughout his complaint, and several of the predicate offenses relate to fraud in various contexts. *See* 18 U.S.C. § 1961(1). However, "all allegations of fraudulent predicate acts[] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) (citation omitted). Not only has Plaintiff failed to identify with particularity any fraudulent acts, but Plaintiff certainly cannot point to any evidence in the record establishing that Defendants committed any of the predicate offenses relating to fraud. With respect to Plaintiff's conclusory allegation that Wells Fargo engaged in some kind of "theft," *see* Dkt. No. 1 ¶ 146, Plaintiff fails to provide any specific facts or identify any evidence in the record establishing this purported "theft." In any event, "[o]rdinary theft offenses and conspiracies to commit them are not among the predicate activities defined in 18 U.S.C. § 1961(1)." *Spool*, 520 F.3d at 184.

Since Plaintiff has failed to establish a predicate act of racketeering activity, Plaintiff has also failed to establish a "pattern" of racketeering activity. *See Katzman v. Victoria's Secret*

*Catalogue*, 167 F.R.D. 649, 656 (S.D.N.Y. 1996) ("In the absence of a predicate racketeering act, no 'pattern' of racketeering activity can exist."). Moreover, even if Plaintiff had established a number of predicate acts, given that this case involves only a single mortgage loan, Plaintiff has still failed to establish a pattern of racketeering activity. *See Ciuffetelli v. Apple Bank For Sav.*, 208 F.3d 202, 202 (2d Cir. 2000) ("[T]he alleged scheme in this case—defendants' attempt to deprive plaintiffs of their mortgaged property—involves a single mortgage loan which was paid in full on January 1998. We conclude that these circumstances do not establish a pattern of racketeering activity under the RICO statute.") (citing *Mead v. Schaub*, 757 F. Supp. 319, 323 (S.D.N.Y. 1991)) ("To the extent that the goal of the alleged scheme in this case was to deprive [plaintiff] of his client bases, each alleged act constitutes nothing more than a step towards its accomplishment. Although the alleged scheme to defraud [plaintiff] may have required a number of steps over a determinate period of time, nevertheless because of its terminable nature and single goal it does not meet the requirement of continuity.").

Finally, Plaintiff argues that his RICO conspiracy claim should survive the instant motion even if he fails to establish an underlying violation or a pattern of racketeering activity. *See* Dkt. No. 1 ¶ 145. However, since Plaintiff has failed to establish a substantive RICO violation, his conspiracy claim also fails. *See Allen v. New World Coffee, Inc.*, No. 00 CIV. 2610, 2002 WL 432685, *6 (S.D.N.Y. Mar. 19, 2002) ("The dismissal of all of plaintiffs' RICO claims leaves the conspiracy cause of action without a leg to stand on. 'Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 must fail if the substantive claims are themselves deficient.'") (quoting *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996)), *rev'd on other grounds*, 525 U.S. 128 (1998).

Accordingly, the Moving Defendants' motion for summary judgment seeking dismissal of Plaintiff's RICO claims is granted.

## F. Defendant Aegis

Defendant Aegis is named in the mortgage and the note as the lender. *See* Dkt. No. 31-5 at 2, 23. No attorney has appeared on behalf of Aegis. The Moving Defendants' attorney filed a notice of appearance only on behalf of Wells Fargo and MERS. *See* Dkt. No. 13. Aegis never filed an answer or any other pleadings or motions in this case.

With that said, the claims against the Moving Defendants are very similar to the claims against Aegis and arise from the exact same facts. Although Plaintiff does assert some claims specific to Wells Fargo and MERS, most of the arguments the Moving Defendants make also pertain to Aegis. Plaintiff has not established a claim for breach of contract, fraud, or for a RICO violation against Aegis for all the reasons discussed above with respect to the Moving Defendants.[3] Accordingly, Plaintiff's complaint as against Aegis is also dismissed. *See Barbagallo v. Cty. of Westchester*, No. 03 CV 7480, 2005 WL 3434425, *3 (S.D.N.Y. Dec. 13, 2005) ("Inexplicably, the other Defendants did not move for summary judgment or dismissal. The . . . claims against them are similar to, or derivative from, the claims presented against the movants. Therefore, they also are dismissed.").

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

---

[3] It is also clear that in Plaintiff's opposition brief, he believed that he was responding to a motion for summary judgment filed by "all" Defendants. *See* Dkt. No. 33 at 1.

**ORDERS** that the Moving Defendants' motion for summary judgment (Dkt. No. 31) is **GRANTED**;[4] and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 27, 2017
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[4] In rendering this decision, the Court is not making any rulings with respect to which entity or entities have standing to commence a foreclosure action. The Court is merely deciding that, based on all of Plaintiff's submissions and pleadings, even liberally construed, Defendants are entitled to summary judgment on the claims that Plaintiff brought in this action. Although a foreclosure action was commenced in 2011, *see* Dkt. No. 31-6 ¶ 4, that action was discontinued and the Court has no knowledge regarding any potential ongoing foreclosure proceedings.